**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William McBEE, Defendant-Appellant.**

**No. 80–7759.**

United States Court of Appeals, Fifth Circuit.*

Unit B

Oct. 26, 1981.

---

**12.** The defense rested at the close of the government's case. Hence, no contrary evidence was introduced.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Mary S. Donovan, Federal Public Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

Craig A. Gillen, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL, Circuit Judge, SMITH *, Judge, and HENDERSON, Circuit Judge.

JAMES C. HILL, Circuit Judge:

### I.

William McBee has been convicted of robbing several banks in the Atlanta area. In this appeal, he challenges the denial of a motion to suppress evidence at his trial.

The issues raised by the appellant stem from a bank robbery that occurred on December 22, 1979. On that day, between 9:00 and 9:15 A.M., a Decatur, Georgia, branch of the Citizens & Southern National Bank was robbed by a lone black male wearing a blue hooded sweatshirt. Immediately after the robbery, a private citizen working in a nearby office told police that he had observed a black male wearing a blue hooded sweatshirt; the man had parked his car, walked into the bank, re-

---

* Judge of the U.S. Court of Claims, sitting by designation.

turned to his car, and driven away. As the man exited the bank, the witness heard the bank's alarm. The witness described the man's car as a 1980 maroon-colored Buick Regal bearing a D.L. Claborn dealer tag. Between 9:15 and 9:30, police issued a look-out over the radio for the vehicle and the black male that had been described to them.

Within two minutes of the radio alert, a policeman located an unoccupied automobile exactly matching the broadcast description. The car was parked on a street between two and three miles from the scene of the bank robbery. The policeman observed that the car appeared to be locked, but he saw a blue hooded sweatshirt in the vehicle. He felt warm air coming from the car's front grill, indicating that the car had been parked there for a short period of time. The policeman interviewed several residents in the immediate vicinity of the automobile, but none of them admitted knowing who owned the car or who had left it on the street.

The vehicle was photographed, then impounded. Between 10:00 and 10:30 A.M., the car was entered and the police recovered the blue hooded sweatshirt, two leather gloves, and several items of paper. Later, at approximately 1:00 P.M., a special agent from the FBI apparently searched the vehicle again, observing the clothing as well as various documents bearing the name "William Keith McBee" and an address at 184 Haynes Street, Apartment 1, Atlanta, Georgia. The papers were found on the right-hand side of the front floorboard.

Other investigators called the D.L. Claborn Buick dealership and learned that the seized vehicle was on loan to William McBee. Records at the car dealership listed 184 Haynes Street, Apartment 1, Atlanta, Georgia, as the address which McBee had given them.

The F.B.I. placed the apartment at 184 Haynes Street under surveillance. Between 5:00 and 6:00 P.M. on December 23, 1979, the apartment manager and a black female (later identified as McBee's wife) were observed loading possessions from the apartment into a station wagon. The two were followed by the F.B.I. as they drove to a motel, where they entered a room and emerged with McBee. While the three unloaded the station wagon, F.B.I. agents moved in and placed McBee under arrest. Upon issuance of a search warrant, officials searched the motel room and seized evidence including, *inter alia*, marked bait bills taken during the December 22 bank robbery.

## II.

The appellant maintains that the warrantless search of the Buick Regal was in violation of the fourth amendment and that evidence obtained therefrom should have been suppressed. We reject that argument because the search in this case falls squarely within the "automobile exception" to the warrant requirement.[1]

■ An automobile may be searched without a warrant where there are both exigent circumstances and probable cause to believe that the car contains articles that law enforcement officers are entitled to seize. *Coolidge v. New Hampshire*, 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). In this case, there were several facts giving rise to probable cause sufficient for the police to seize and search the Buick Regal. First, the vehicle exactly matched the description of the car driven away from the bank by the black male who had left the scene as the bank's alarm sounded. Second, the blue hooded sweatshirt—in plain view in the car—connected this car not only to the witness's description of the male who was seen leaving the bank, but also to the bank tellers' description of the robber. Finally, the location of the car and the warmth of its engine strongly supported the connection.

Given the existence of probable cause, the exigencies of the situation would have justi-

---

1. The automobile exception is applied here in its pure form. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and its progeny are inapposite because no container was opened in the search of McBee's Buick Regal.

fied a search of the automobile when it was found parked on the street. The fleeing bank robber had not been apprehended or even identified, and any evidence that could have informed the police of the identity and possible location of the robber would have been subject to easy removal.[2] This was clearly a case where an immediate warrantless search would have been proper, a case where it was "not practicable to secure a warrant because the vehicle [could have been] quickly moved out of the locality or jurisdiction in which the warrant [would have been] sought." *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).

■ The appellant contends, however, that exigent circumstances no longer existed after police impounded the vehicle. This court disposed of the same argument in *United States v. Mitchell*, 538 F.2d 1230 (5th Cir. 1976) (en banc), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977).

> [The] contention, that by the time of the search [the vehicle] had been immobilized, exigence had passed, and a warrant could have been obtained at leisure, is foreclosed by *Chambers v. Maroney* and *Cardwell v. Lewis*. Both of these authorities recognize that exigence is to be determined as of the time of seizure of an automobile, not as of the time of its search; the fact that in these cases sufficient time to obtain a warrant had passed between each seizure and the corresponding search did not invalidate either.

*Id.* at 1232 (citations omitted). Under *Mitchell*, then, the exigencies at the time of the seizure of McBee's car legitimated the warrantless search which took place after the car had been impounded.[3]

■ We reach the same conclusion—that the appellant's rights were not violated—by examining the constitutionality of the search independently from controlling Fifth Circuit precedent. Although obtaining a warrant before an intrusion into an automobile may be preferable, the Constitution does not mandate that procedure in all circumstances. "[L]ess rigorous warrant requirements govern [automobile searches] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973).

---

2. The circumstances surrounding the seizure and search of the automobile in this case distinguish it from *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There the defendant had known of the on-going investigation for some time and had already had ample opportunity to destroy the evidence. The car was regularly parked in a private drive when police surrounded its owner at his home. "There was no way in which he could conceivably have gained access to the automobile after the police arrived on his property." *Id.* at 460, 91 S.Ct. at 2035.

3. Our decision in *United States v. Fogelman*, 586 F.2d 337 (1978), is not to the contrary, though the court found that the search of parked vehicles in that case violated the fourth amendment. In *Fogelman* there was no exigency; numerous officers were around the premises and the drivers of the vehicles were in custody. "[T]here was no threat that the [vehicles] were likely to be moved or their contents lost." *Id.* at 342.

The court in *Fogelman* did note that Fifth Circuit cases have recognized that the *Cham-* bers doctrine, on which *Mitchell* relied, is limited to highway stops. *See* 586 F.2d at 343. That statement, however, was based on cases prior to *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In *Cardwell*, a plurality of the Supreme Court refuted such a limitation of *Chambers*:

> The fact that the car in *Chambers* was seized after being stopped on a highway, whereas [this] car was seized from a public parking lot has little, if any, legal significance. The same arguments and considerations ... obtain.

*Id.* at 594–95, 94 S.Ct. at 2471–72. Thus, the automobile exception should not be confined to situations where the vehicle is seized after police have stopped its occupants on the highway. Instead, exigent circumstances must bring the exception into play where, as in *Chambers, Cardwell*, and the case *sub judice*, "the automobile was seized from a public place where access was not meaningfully restricted." *Id.* at 593, 94 S.Ct. at 2471.

As we have noted, the police had probable cause to search McBee's car. Instead of utilizing a special detail of officers to secure the automobile during a search on the street, which would have been both inconvenient and inefficient, the police determined that the search could best be conducted at police headquarters. Law enforcement agents seized the vehicle and had it under their control, but there may still have been danger that the vehicle or its contents may have been moved before a valid search warrant could be obtained. *See United States v. Chadwick*, 433 U.S. 1, 13 n.7, 97 S.Ct. 2476, 2484 n.7, 53 L.Ed.2d 538 (1977). Police were thus justified in carrying out the warrantless search.[4] The procedure was reasonable and the fourth amendment was satisfied; the automobile exception to the warrant requirement still obtained after the seizure since the mobility problem, though slight, continued to exist. *See Chambers*, 399 U.S. at 52, 90 S.Ct. at 1981. *See also Arkansas v. Sanders*, 442 U.S. 753, 765 n.14, 99 S.Ct. 2586, 2594 n.14, 61 L.Ed.2d 235 (1978).

### III.

The appellant contends that evidence obtained from the search of his motel room should have been suppressed at trial because it represented "the fruit of the poisonous tree." He points out that the warrantless search of the Buick Regal led police to his apartment and that surveillance of the apartment led them to his motel room. Having held that the warrantless search of the automobile did not violate the fourth amendment, we are able to reject the appellant's contention without deciding whether he had a legitimate expectation of privacy in the room.

There are, moreover, alternative grounds for affirming the district court's decision to allow evidence obtained from the motel room. The tag on the exterior of the Buick Regal led investigators to D.L. Claborn, the dealership that had loaned McBee the car. Investigators obtained McBee's name and address from D.L. Claborn and had this information before they staked out McBee's apartment.[5] The evidence need not be suppressed as fruit of the poisonous tree since the same evidence was discovered from an independent source. *United States v. Fitzharris*, 633 F.2d 416, 421 (5th Cir. 1980); *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978).

AFFIRMED.

---

4. Indeed, "warrantless searches of vehicles by state officers have been sustained in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not nonexistent." *Cady v. Dombrowski*, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973).

5. How investigators first obtained McBee's address is unclear but irrelevant. *See United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.