**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Fernando CISNEROS–MIRELES and
Jorge Luis Cisneros-Mireles,
Defendants-Appellants.**

**No. 84–2075
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1984.

---

Pena, McDonald, Prestia & Ibanez, L. Aron Pena, Edinburg, Tex., for Fernando and Jorge Luis Cisneros-Mireles.

Daniel K. Hedges, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Defendants Fernando Cisneros-Mireles and Jorge Luis Cisneros-Mireles (together with two others) were charged with one count of conspiracy to possess, and one count of possessing, marihuana with intent to distribute it, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846.[1] After the district court's denial of their pretrial motions to suppress evidence seized from them, defendants entered conditional pleas of guilty to the conspiracy count pursuant to Fed.R.Crim.P. 11(a)(2). They appeal their convictions on the sole ground that the district court erred in denying their motion to suppress. Finding no error in the district court's ruling in this respect, we affirm both convictions.

## I.

## FACTS

There is no substantial dispute about the primary facts found by the district court. On October 5, 1983 at 10:00 a.m., Tony Tamayo, a special agent with the Drug Enforcement Administration (DEA), stationed in Brownsville, Texas, received a tip from an informant, who had previously proved reliable, that Fernando had a quantity of marihuana stored in black plastic bags at his residence in Brownsville. The informant further stated that Fernando drove a red Ford pickup truck with Mexican license plates and that he carried a weapon that appeared to be a machine gun. The informant indicated that he had this knowledge from his own personal information, and that he had seen the marihuana in the bags at the residence of Fernando within the past twenty-four hours.

At 10:20 a.m., Tamayo and five or six other DEA agents established a surveillance of the Cisneros-Mireles residence. At approximately 3:15 that afternoon, Fernando appeared driving a red Ford pickup truck with Mexican license plates. He left his residence five minutes later and then reappeared at 4:15 p.m. when, having driven past the residence twice, he parked near the rear of the house together with a black-and-gray pickup truck.

About 4:35 p.m., a maroon-and-gray camper truck parked at the front of the residence. The individual driving the camper truck walked to the back of the residence, and then, together with Fernando, walked back to the front. Tamayo testified that the placement of the DEA agents allowed them to observe the front and one side of the house, but not portions

---

1. Additionally, Fernando Cisneros-Mireles was charged with one count of unlawfully carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2).

of the rear. He was, therefore, unable to ascertain what was going on at the back of the house. Approximately five minutes after it arrived, the camper truck departed. Shortly thereafter the other two trucks also left. The black-and-gray pickup, driven by Jorge, proceeded to the parking lot of Cisneros House Movers, a house moving business owned by defendants and located about five or six miles from the residence. Adjacent to the parking lot was a small aluminum building which served as the office for the house moving business. The lot was used to park the business' vehicles. The lot had recently been, and still had the appearance of being, used as a used car sales lot open to the public (the lot had an Auto Car Lot sign and a Cisneros House Movers sign). The lot was unfenced or chained and had two exits. Fernando, driving the red pickup, arrived at the parking lot at about 5:00 p.m., after having driven to a service station near the lot and also having stopped briefly back at his house. Shortly after Fernando's arrival, the DEA agents, who had followed the suspects to the business address, observed Fernando get out of the red truck and talk to Jorge and two other persons who had been at the lot before Jorge and Fernando arrived. Jorge then moved the black-and-gray pickup, Fernando walked over to it and then to a Buick which was parked on the lot (and later established to be registered to Jorge). The Buick's trunk opened while Fernando was standing at its back. Jorge and the two others thereupon began to remove black plastic garbage bags from the bed of the black-and-gray pickup and load them into the trunk of the waiting Buick. At that time, which was about 5:15 p.m., Tamayo and the other agents promptly moved in, and as they did so the trunk of the Buick was apparently closed and Jorge began leaving in the black-and-gray pickup.

The agents detained all four persons and conducted a pat down search of each. They found three black plastic garbage bags in Jorge's trouser pocket and a set of car keys in Fernando's pocket. Using these car keys, Tamayo opened the Buick's trunk and found black plastic garbage

bags. Since the bags were not sealed, the agent could plainly see that the contents were marihuana wrapped in clear cellophane. All four suspects were the placed under arrest.

There was a small child in the bed of the red pickup. Upon being asked by the agents what plans should be made for the child, Fernando replied that he would take care of him, but he began walking toward the cab of the truck rather than to the bed of the truck where the child was. The agents then stopped and handcuffed him, and Tamayo went to the cab and found in plain view an M–1 carbine known as an "enforcer".

## II.

## DISCUSSION

▪▪▪ Searches conducted without the prior approval of a judge or magistrate must generally be justified under one of the "specifically established and well-delineated exceptions" to the general warrant requirements. *See Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *United States v. Gaultney,* 581 F.2d 1137, 1141 (5th Cir.1978), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 259 (1980). In justifying its seizure and search of the Buick in this case, the government has relied on the "automobile" exception. *See United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 2162–64, 72 L.Ed.2d 572 (1982). Our cases have held that an automobile may be searched without a warrant where there are both exigent circumstances and probable cause to believe that the car contains items that law enforcement officers are entitled to seize. *See United States v. McBee,* 659 F.2d 1302 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982); *Gaultney,* 581 F.2d at 1142. Since probable cause in this case grew out of an informant's tip, our review of the evidence must be guided by the Supreme Court's decision in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See United States v.*

*Mendoza,* 722 F.2d 96, 100 (5th Cir.1983) (standard for probable cause the same for warrantless search as for obtaining a warrant), *on rehearing,* 727 F.2d 448 (5th Cir. 1984) (*Gates* applies retroactively). In *Gates* the Supreme Court abandoned the rigid two-pronged test under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant's tip establishes probable cause for the issuance of a warrant (the informant's veracity or reliability *and* the basis of his knowledge, *each* of which had to be discretely established). In place of this test, the Court established a "totality of the circumstances" approach. With respect to this approach the *Gates* Court stated:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." 103 S.Ct. at 2332 (citations omitted).

The Court further observed that an informant's veracity, reliability, and basis of knowledge were to be understood as

> "... closely entertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place.
>
> "....
>
> "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to

the other, or by some other indicia of reliability." *Id.* at 2328, 2329.

■ In the present case we think it clear that given the totality of the circumstances, there was probable cause to believe that the Buick contained marihuana. The informant who gave the tip which ultimately led to the seizure of the contraband in this case was personally known by Agent Tamayo to be reliable. Tamayo testified that the informant had given him reliable information on at least six occasions before. Furthermore, the informant's tip was based upon his own personal information, as he reported to Tamayo that he had seen the marihuana in the black plastic garbage bags at Fernando's residence within the past twenty-four hours. Corroboration of the informant's tip came when the officers observed Fernando and the red Ford pickup with Mexican license plates, as reported by the informant, at the address given to them by the informant. Further corroboration came when, having followed the vehicles from the residence, the agents saw black plastic garbage bags being loaded into the Buick. Under these circumstances, we hold that there were such "trustworthy facts and circumstances" within the DEA agents' personal knowledge that would cause "a reasonably prudent man to believe that the vehicle contained contraband." *United States v. Melendez-Gonzalez,* 727 F.2d 407, 413 (5th Cir.1984) (quoting *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978)). *See generally United States v. Rivera,* 684 F.2d 308 (5th Cir.1982).

We also find that the circumstances were sufficiently exigent to justify the seizure and search. The agents could hardly have been expected to have obtained a search warrant for the Buick prior to their arriving at the parking lot, since at that time, they had no knowledge of the Buick or that marihuana would be transferred to it.[2] Al-

---

**2.** Defendants make much of the failure of the DEA agents to obtain a warrant to search the residence of Fernando once they received the informant's tip. Contrary to defendants' assertion, we need not accept the dichotomy that the

informer was either reliable (and, therefore, a warrant should have been obtained immediately) or unreliable (making the ultimate seizure and search of the Buick without probable cause). We do not think it was unreasonable

though the car was parked on private property, that property was essentially open to the public, with no fence and two exits. Furthermore, given the circumstances and the experience of the DEA agents, we do not think it unreasonable for them to have believed, as Agent Tamayo testified, that marihuana "will not sit in any one place for any length of time," and that the loaded Buick would not stay sitting on the lot.

The facts of this case are thus far removed from those in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There, after having arrested the defendant at his house on suspicion of murder and having obtained warrants (later determined to be defective) to search his house and cars, police officers towed the defendant's cars to the police station where they were searched two days later. At the time they were towed, the cars were parked in defendant's driveway. When the defendant sought to suppress evidence discovered in one of the cars, the Court rejected the government's attempt to bring the seizure and search within the "automobile" exception to the warrant requirement, and observed as follows:

> "[S]urely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile." *Id.* at 462, 91 S.Ct. at 2036.

The *Coolidge* Court also focused on the following factors in determining that no exigent circumstances existed: (1) the police had known for some time the probable role of the car in the crime; (2) there was no indication that the defendant intended to flee; (3) the defendant had already had ample opportunity to destroy any evidence in the car; (4) there was no suggestion that the car was being used for an illegal purpose on the night in question; (5) the car was regularly parked in the driveway of the defendant; and (6) the objects of the search were neither stolen, dangerous, nor contraband. *Id.* at 460, 91 S.Ct. at 2035. In contrast with these factors, we note the following with respect to the present case: (1) the DEA agents had no prior knowledge concerning the Buick; (2) there was probable cause to believe that marihuana was in the car at the time it was seized; (3) there was reason to believe that the car was being used for an illegal purpose; (4) there was no reason to believe that the Buick was customarily parked in the car lot or that it would remain there if the agents left it; and (5) the object of the search was contraband.

We therefore view *Coolidge* as not controlling in this case, finding the facts here more parallel to those in *United States v. Gaultney, supra.* In *Gaultney*, DEA agents arrested the defendant within a few feet of his truck parked outside a restaurant, in which they had probable cause to believe there was a pound of cocaine. There we found no distinction between the seizure of a car stopped on a highway and one seized in a public parking lot. *Id.* at 1142 (quoting *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) ).[3]

---

for the agents to stake out the residence to obtain corroboration of the tip before moving to seize the marihuana. Nor does their failure to obtain a warrant without further corroboration serve to nullify the exigencies present when, at the parking lot, they for the *first* time observed the black plastic garbage bags reported to contain the marihuana. *See Cardwell v. Lewis*, 417 U.S. 583, 594–96, 94 S.Ct. 2464, 2471–72, 41 L.Ed.2d 325 (1974).

**3.** We also upheld the search of a parked car in *McBee, supra,* where soon after a bank robbery the suspect had not been apprehended or identi-

fied, and any evidence in the car that might have informed police of the identity and possible location of the robber could have been easily removed from the car, if left unattended. *See* 659 F.2d at 1305. *See generally* 2 LaFave, *Search & Seizure* 527–28 (1978 & Supp.1984) ("Exigent circumstances [with respect to searches of parked cars] are most frequently found to exist where the defendant is still at large, where the defendant is in custody but his accomplices have not yet been apprehended, where a friend or family member of the defendant is aware of the police interest in the defend-

Furthermore, in evaluating the question of whether exigent circumstances were present we stated as follows:

> "There is no doubt that if the agents had permitted [the defendant] to retrieve the cocaine from the truck and then arrested him ... the cocaine ... would have been readily admissible in evidence. However, had they permitted him to enter the truck, he could have spotted the other agents and suspected that his project had gone sour. He could then have fled the scene, forcing the officers to give chase or to permit him to escape, along with the contraband in the vehicle. Had the officers waited until a chase actually took place the subject might nevertheless have escaped, as often happens. Certainly, if a chase had ended successfully the officers would have had the right to arrest him, with an immediate search of the vehicle.... Under the facts of this case, the officers were under no constitutionally imposed compulsion to wait any longer. Probable cause and exigent circumstances had met; it remained only for the officers to act." *Id.* at 1143 (citation omitted).

Finally, we note that any argument that exigent circumstances would have ceased once the DEA agents seized the Buick, and that they should have therefore obtained a warrant after the seizure but prior to any search, has clearly been rejected by the Supreme Court. *See Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 3081, 73 L.Ed.2d 750 (1982) (per curiam) ("It is thus clear that the justification to conduct such a warrantless search [where there is probable cause to believe that an automobile on the road contains contraband] does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been

ant or the car, or where the car is parked on the street under circumstances where a stranger might be tempted to tamper with the car, or where evidence could be destroyed by the elements.") (footnotes omitted). *See also id.,* 1984 Supp. at 203 (unlikely that *Ross* is inapplicable to parked cars).

driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." (Footnote omitted.) ). *See also United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 2163 & n. 9, 72 L.Ed.2d 572 (1982); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. McBee, supra,* 659 F.2d at 1305; *United States v. Mitchell,* 538 F.2d 1230, 1232 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977).

The decision of the district court is therefore affirmed.

AFFIRMED.

Whether, with respect to warrantless searches or seizures of vehicles in the open (or at least those not parked in a residential curtilage), a requirement for exigent circumstances, in addition to probable cause, survives *Ross* we need not decide, as here the circumstances were in any event sufficiently exigent.