**UNITED STATES of America, Appellant,**

v.

**James S. CAROLINE.**

**No. 85–6070.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1986.

Decided May 30, 1986.

Thomas J. Motley, Asst. U.S. Atty., a member of the Bar of the District of Columbia, pro hac vice, by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Ronald Dixon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

Melvin M. Dildine, Washington, D.C., appointed by this Court, for appellee.

Before WALD, MIKVA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The United States appeals from the order of the United States District Court for the District of Columbia suppressing a shotgun that the police found in a leather bag during the course of a warrantless search of an automobile. The District Court held that defendant Caroline's fourth amendment rights had been violated since the police had a duty to obtain a warrant prior to the search, and, alternatively, were not authorized to open the bag that they found in the car even if the warrantless search of the car was justified. We reverse and hold that the automobile exception to the warrant requirement applied here, that the police had probable cause to search the car, and that they had the right to open the bag in the course of the search.

## I. BACKGROUND

On May 5, 1985, at approximately 4:30 in the afternoon, two Metropolitan Police Department officers observed the defendant, James S. Caroline, and his accomplice, Michael L. Everett, hurriedly leave a clothing store at the corner of 26th and P Streets, N.W., cross the street in the middle of the block of traffic, and enter a sewing store. Immediately after walking into the store, Everett turned around and came back to the sidewalk where he began looking up and down the street. Twenty to thirty seconds later, Caroline left the shop, tapping Everett on the shoulder as he passed him. Both men then jogged to a dark blue Datsun 280Z which was parked about a half block from the shop, and rode away.

Recognizing that the men's activities fit the pattern often accompanying petty larcenies, one of the officers entered the sewing shop to investigate. The owner of the shop informed the officer that Caroline had grabbed some clothes from hangers in the shop and had begun walking out. The

owner, however, had surprised Caroline and was able to grab the clothes away before Caroline ran from the shop. The owner indicated that she was unwilling to prosecute the incident.

After futilely attempting to locate the Datsun 280Z, the two officers broadcast a radio lookout for the suspects and the car. Approximately ten minutes after the broadcast, another patrol officer radioed that he had observed the suspects parking the car in the 3200 block of Reservoir Road, N.W., and walking away from the vehicle.

The two officers who had earlier observed the suspects on P Street proceeded to the Reservior Road area where, together with two additional officers, they continued their surveillance of Caroline and Everett. Over the next 35 minutes the suspects were observed entering four stores on Wisconsin Avenue, about a quarter of a mile from where they had left the car. Everett was seen coming out of some of those stores and looking up and down the street, just as he had done at the sewing shop on P Street. After leaving one store, a sporting goods shop, the police saw Caroline reach underneath his jacket or shirt and pull out some yellow shopping bags. After the suspects left the fourth store, a women's clothing shop, one of the officers interviewed the owner and was told that there were two blouses missing from the area where the suspects had been looking. The officer radioed the other officers to stop the suspects. When they were apprehended, Caroline was holding a yellow bag containing merchandise stolen from the fourth shop. Both Caroline and Everett were placed under arrest.

The police obtained the keys to the Datsun 280Z from Caroline, who confirmed that the car was registered to Barbara Harrington, an alleged friend of Caroline's. Two officers proceeded to the car, where they observed through the window "what appeared to be a new leather jacket," and "what appeared to be a new leather bag." Transcript ("Tr.") at 33, 55, 59. After opening the car with the keys, the officers searched for evidence of other thefts, and found three items they considered relevant: the jacket, the leather bag, and a halloween mask. One of the officers noted that the bag "felt very heavy," and that it seemed to contain "a long, hard cylindrical object" that "felt like a barrel of a gun." Tr. at 60. On opening the bag, the officer found a sawed-off shotgun disassembled in three pieces. Subsequently, a federal grand jury indicted both Caroline and Everett of possession of an unregistered firearm, 26 U.S.C. §§ 5861(d), 5871, and second degree theft, 22 D.C.Code §§ 3811, 3812(b).

Caroline moved to suppress the shotgun, arguing that the warrantless search of the automobile, and opening of the bag, violated his fourth amendment rights. After a one-day hearing, the District Court granted the motion. The court first held that, whether or not there was probable cause to search the Datsun, "the police had the duty to attempt to get a search warrant, and go to a magistrate before they searched that car." Tr. at 101–02. Moreover, the District Court concluded that, even if the police had the right to conduct a warrantless search of the car, they still were required to get a warrant before opening the bag containing the shotgun. *Id.* at 102. Given these holdings, both of which independently required suppression of the shotgun, the District Court did not pass on whether or not there was in fact probable cause to search the car.

## II. Discussion

### A. *Search of the Car*

#### 1. *Applicability of the Automobile Exception*

■ The District Court erred in holding that the police were duty bound to obtain a search warrant before searching the Datsun 280Z. The police knew that the car was owned by a third party who presumably had a set of keys. Thus, their only method of ensuring that the car would not be driven away, or that evidence would not be tampered with, would have been to post a guard nearby until a search warrant could be obtained, or to tow the car. Ad-

dressing a similar claim that the police must, whenever possible, immobilize a vehicle while they seek a search warrant instead of conducting an immediate warrantless search, the Supreme Court has held that:

> arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which is the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

*Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

Caroline argues, nonetheless, that *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), controls here. In *Coolidge*, a plurality of the Court held that a warrant was required before the police could search a car parked in the private driveway of the already arrested suspect. Critical to the Court's decision were several circumstances: the police had long been aware of the need for the search and thus had ample opportunity to obtain a warrant; the police had also posted two police guards at the house throughout the night, thereby barring access to the car. Thus, the Court concluded, none of the exigencies that normally give rise to the automobile exception were present: "no alerted criminal bent on flight, no fleeing opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, *not even the inconvenience of a special police detail to guard the immobilized automobile.*" *Id.* at 462 (emphasis added). Similarly, in *United States v. Robinson*, 533 F.2d 578 (D.C.Cir.1975) (en banc), this court expressed concern about whether the automobile exception justified a warrantless search of an unoccupied, parked and locked car, when the police had already "eliminate[d] any realistic possibility of mobility by surrounding the car with a substantial number of officers." *Id.* at 581.

The facts of this case, however, are quite different from *Coolidge* and *Robinson*. Securing a warrant would have necessitated the police's posting a guard at the car or transporting the car to a compound, in order to ensure that the car's owner did not take the car or tamper with any evidence. Had the police chosen to go that route, as they did in *Coolidge* and *Robinson*, a warrantless search might not have been justified. But *Chambers* established that where the police do not commit themselves to guarding the vehicle, and where some exigency such as a realistic potential for mobility exists, the automobile exception applies.[1] The circumstances here thus clearly take this case out of *Coolidge* and *Robinson*, and place it squarely within the confines of *Chambers*. *See generally Cardwell v. Lewis*, 417 U.S. 583, 593, 94 S.Ct. 2464, 2470, 41 L.Ed.2d 325 (1974) (plurality opinion) (automobile exception applied where "automobile was seized from a public place where access was not meaningfully restricted"); *United States v. McBee*, 659 F.2d 1302 (5th Cir.1981) (exigent circumstance justified search of car used in bank robbery where fleeing bank robber had not been apprehended or even identified), *cert. denied*, 456 U.S. 949, 102 S.Ct.

---

**1.** In *United States v. Free,* 437 F.2d 631 (1970), this court explained that the *Chambers* rule is predicated on a combination of a decreased privacy expectation in a vehicle, and the fact that "the public interest would be disserved by both the substantial burden and the diversion of scarce police resources that would be involved in any requirement for immobilizing a car pending application for a warrant." *Id.* at 635;

see also *Arkansas v. Sanders,* 442 U.S. 753, 765 n. 14, 99 S.Ct. 2586, 2594 n. 14, 61 L.Ed.2d 235 (1979) (discussing Court's hesitancy to impose "a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary" to immobilize vehicles pending the issuance of a warrant).

2020, 72 L.Ed.2d 474 (1982); *United States v. Evans*, 481 F.2d 990, 994 (9th Cir.1973) (exigent circumstance existed since "police could reasonably believe the evidence might evaporate through the efforts of Evans' girlfriend who owned and had a right to immediate possession of the vehicle"); *cf. United States v. Whitfield*, 629 F.2d 136, 141 (D.C.Cir.1980) (with regard to car stopped in transit, "exigency arises when the police are confronted with a motor vehicle, at least when it is in a public place and apparently in operating condition"), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). Thus, if the police had probable cause to search the car, they were under no constitutional duty to obtain a warrant.

### 2. *Probable Cause*

■ Probable cause for a search exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Only "the probability, and not a prima facie showing, of criminal activity is the standard." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). In this case, given the pattern of the crimes that the defendants were engaged in, and the police's observation that the defendants had used the car *during* their crime spree, we hold that there was in fact a "fair probability" that shoplifted goods, or evidence of shoplifting, were in the car at the time of the search.

From 4:30 p.m., when the defendants first captured police attention, until the time of their arrest, approximately one hour and five minutes later, the police had the defendants under surveillance for approximately 35 minutes. First, the police observed their activities around the two stores on P Street, and learned of the attempted theft at the second store. Then, after a 28-minute lapse in surveillance, only part of which could be accounted for by a nine block drive from P Street to Reservoir Road, Caroline and Everett entered four more stores in the 35 minutes prior to their arrest.

In light of this pattern of activity the police could justifiably deem it probable that when Caroline and Everett went back to the car after having been seen entering the two stores on P Street, they had stolen merchandise with them. Although the police knew that the theft from the sewing store had been foiled, it was quite probable that the defendants had stolen merchandise from the first store where the police observed them. Indeed, it was their behavior in leaving that very first store that triggered the officers' suspicion; the suspects had hurriedly left the store, crossing the street in midtraffic. Any merchandise they had stolen from that store, and any merchandise they might have stolen from stores entered into as part of their spree before the police spotted them, or during the lapse in surveillance, would almost surely have been deposited in the automobile before Caroline and Everett parked on Reservoir Road to continue their criminal activity. *See United States v. Christenson*, 549 F.2d 53, 57 (8th Cir.1977) ("reasonable to infer that [suspect] removed the stolen items ... by the only apparent means of transportation available to him and that the contraband would still be in the automobile").

We reach this determination without relying on the jacket and bag that the police observed in the car.[2] While there was some evidence that observing these items *further* heightened the officers' suspicion, we hold that the police already had probable cause before they saw the items. Indeed, one of the searching officers testified that the decision to search was made without regard to the items in the car. He explained that,

> did express some doubts about whether the bag and jacket in the car looked new; we reach our decision without relying on the appearance of those items.

---

**2.** Since the District Court made no ruling on probable cause, we, of course, base our decision exclusively on the uncontested facts brought out at the suppression hearing. The District Court

[c]onsidering the attempted theft that had been made on P Street—we were aware of the time period inbetween [sic] the theft on P Street and the time the vehicle and the defendant had been relocated—I thought there was a high possibility that they might have made other thefts in the area that could be possibly be [sic] inside the vehicle.

Tr. at 34.

### B. *Opening the Bag*

 Once the police had probable cause to search the car in this case, they had the right to open all containers within it that might have contained contraband or evidence of the criminal activity. In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that when the police have probable cause to search an automobile, they may "conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched," *id.* at 800, including the opening of closed packages. The Court distinguished cases such as *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), explaining that in those cases the police did not have probable cause to "search the vehicle or anything within it except the footlocker in the former case and the green suitcase in the latter." *Ross,* 456 U.S. at 814, 102 S.Ct. at 2167. In *Ross,* by contrast, the probable cause went to the entire vehicle, and the Court held that the police could open any container within the vehicle in which the sought after contraband might have been hidden.

As we have already discussed, *see supra* pp. 201–202, the police had probable cause to search the entire car in this case, not just the bag that they happened to see through the window. Thus, the police had the right to open the bag as well, and the shotgun found in it should not have been suppressed.

### CONCLUSION

We have carefully reviewed the undisputed facts and the law of this case and have determined that the police had probable cause to search the Datsun 280Z. Because the warrantless search fell within the automobile exception to the warrant requirement, the District Court's order suppressing the shotgun is

*Reversed.*