**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel Thomas REYES,
Defendant-Appellant.**

No. 85–1795
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 24, 1986.

H. Thomas Hirsch, Odessa, Tex., Thomas J. Nolan, Palo Alto, Cal., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Michael R. Hardy, Jim Blankinship, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The appellant Daniel Reyes was charged with two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). At trial, Reyes moved to suppress the fruits of a search of his vehicle and personal effects, but the motion was denied by the district court. Reyes was found guilty on both counts and was sentenced to concurrent prison terms of fifteen years and three years, as well as to a special fifteen-year parole term. Reyes argues on appeal that the search of his vehicle and personal effects was made without probable cause. He argues in the alternative that even if probable cause existed, the wholesale search of his vehicle and luggage without a warrant is not supported by the automobile exception to the search warrant requirement. Having reviewed the record and the briefs, we find no merit to Reyes' arguments, and therefore affirm his conviction.

I

On October 7, 1985, Gordon Ridings, a United States Customs Investigator in Presidio, Texas, received a phone call from a confidential informant whom he had known for two years. The informant told Ridings that a Mexican named Daniel, who had been staying in Room 414 of the Holiday Inn on Highway 80 between Odessa and Midland, Texas, for the past ten days, was in possession of a large quantity of cocaine. The informant further indicated that Daniel, whom he described as heavily armed and dangerous, drove a black and silver 1985 Chevrolet Blazer ("Blazer") with a temporary California license tag located in the back window. Additionally, Riding was told that the informant had personally seen cocaine in Daniel's vehicle and motel room within the previous twenty-four hours.

Pursuant to an agreement between Customs and the DEA, Ridings relayed this information to DEA Agent Larry Nichols. Nichols, who had a court appearance later that day and therefore would be unable to handle this matter, contacted James Dixon of the Odessa Sheriff's Office to investigate. Dixon, a sergeant in the Sheriff's Department's Narcotics Division, was an experienced narcotics investigator. After Ridings briefed Dixon on the details, Dixon contacted the U.S. Attorney's Office, which

advised him to go to the Holiday Inn and attempt to corroborate the informant's story before seeking a search warrant. Later that same morning, Dixon and Officer Christopher Clark of the Odessa Police Department arrived at the Holiday Inn where they immediately observed a Mexican male loading suitcases and gun cases into a vehicle fitting the informant's description. The Blazer was parked in front of Room 414. Dixon entered the motel and requested the records for Room 414 from the motel manager. The manager provided records from September 29 to October 7, 1985, and informed Dixon that the occupant's name was Daniel Reyes. The records indicated approximately $600 worth of long distance telephone calls made in that period of time. Before leaving the motel, Dixon noticed that the Mexican male he had observed earlier was standing at the front desk. Dixon overheard him say that his name was Daniel Reyes and that he would like to check out of room 414. Dixon and Clark then left the motel area, radioed for assistance, and parked where they could observe the Blazer.

Reyes departed the motel in the Blazer, and was followed by Dixon and Clark. Less than ten minutes later, Dixon and Clark, along with two local police officers who had joined them, stopped Reyes, removed him from the Blazer, and handcuffed him. The four law enforcement officers then proceeded to search the Blazer, including the suitcases and gun cases contained inside. Specifically, they opened a small nylon zippered athletic bag found under the suitcases which contained $12,000 in cash, a gun, a shoulder holster, and a smaller locked nylon bag. Dixon then took the keys out of the ignition and opened this bag. Inside were one and one-half pounds of eighty-three per cent pure cocaine, diazepam, and some pills. They also found four handguns, one of which was loaded, a rifle, and a shotgun. The fruits of this search formed the basis of the October 9, 1985, indictment.

On October 21, 1985, Reyes moved on fourth amendment grounds to suppress the evidence gained from the October 7, 1985, search. After an evidentiary hearing, the district court denied the motion. Subsequently, Reyes waived his right to a jury trial and was found guilty by the district court after a two-day bench trial.

## II

### A.

Reyes argues that the search of his vehicle and the articles therein was unlawful because it was not based on probable cause. He contends that probable cause was lacking because the police relied on information provided by an untested informant and failed to corroborate any significant facts which could reasonably lead the police to believe that he possessed narcotics. In the alternative, he submits that even if probable cause existed, it was only reasonable for the government to believe that narcotics were in the luggage. Consequently, he argues that the wholesale warrantless search of the Blazer and all its contents is not supportable by the automobile exception.

■ "A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile." *New York v. Class*, —— U.S. ——, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986). The automobile exception to the fourth amendment's warrant requirement protects only searches supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise must be such as the magistrate could authorize. *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

This circuit has consistently held that the automobile exception applies where there are both exigent circumstances and probable cause to believe that the vehicle in question contains property that the government may properly seize. *See United States v. Cisneros-Mireles*, 739 F.2d 1000, 1002 (5th Cir.1984). Here, as in *Cisneros-Mireles*, probable cause is based upon an informant's tip. Thus, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527

(1983) provides the applicable standard of review. In *Gates*, the Supreme Court announced that a "totality-of-the-circumstance" test is to be applied to determine whether an informant's tip provides probable cause. According to *Gates*, the search for probable cause involves "a practical, common-sense decision whether, given all the circumstances . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. Although an informant's veracity, reliability, and basis of knowledge still should be considered, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329; *see generally United States v. Marbury*, 732 F.2d 390 (5th Cir.1984). Here there was probable cause to believe Reyes' automobile contained narcotics.

A review of Supreme Court and Fifth Circuit precedent reveals several factors that are helpful in evaluating this particular cause. First of all, innocent behavior can support a finding of probable cause. As the Supreme Court stated in *Gates*, the relevant inquiry in determining probable cause "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal activity." *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13; *see also United States v. Mendoza*, 722 F.2d 96, 101 (5th Cir.1983).

■ Although the usual method of proving an informant's reliability is to point to information provided in the past that turned out to be truthful, this is not the only method. An informant's tip can be confirmed by independent police work which corroborates the information received. *See United States v. Phillips*, 727 F.2d 392, 396 (5th Cir.1984). Additionally, the credibility of an informant's tip is strengthened if it is made in great detail,

thus evincing a strong basis for the informant's knowledge. *See Marbury*, 732 F.2d at 396 & n. 4; *Phillips*, 727 F.2d at 399.

■ The surrounding facts and information are not to be viewed in isolation but must be viewed in the light of their having been evaluated by trained law enforcement officials. What appears quite innocent to the untrained eye may be significant to the trained law enforcement official. *See Mendoza*, 722 F.2d at 102. Finally, an informant's tip is buttressed by the fact that it is based on his own personal observation rather than on hearsay. *See Cisneros-Mireles*, 739 F.2d at 1003.

**B.**

■ In the present case, Ridings had known the informant for more than two years and considered him to be reliable even though he had never supplied Ridings with information leading to an arrest or conviction. The informant had gained Ridings' trust because on several occasions Ridings had questioned him concerning his whereabouts at particular times which were already known by Ridings. Each time the informant answered truthfully.

Just as important, numerous detailed facts were supplied by the informant. Specifically, he informed Ridings of (i) the suspect's first name, (ii) where he was staying, (iii) how long he had been there, (iv) the make, year, and color of his vehicle, (v) the type of contraband, and (vi) the fact the suspect was armed. More important, all this information was based on the informant's personal knowledge, which is evinced by his statement to Ridings that he had seen the cocaine in the Blazer and room 414 within the past twenty-four hours.

Additionally, much of the information supplied by the informant was corroborated by Dixon during his visit to the Holiday Inn. His observation of a Mexican male loading suitcases and gun cases into a black and silver Blazer outside of room 414 corroborated the tip. Further corroboration was provided by Dixon's discovery that

the occupant at room 414 had been there for the past ten days and was named Daniel. A finding of probable cause was also strengthened by Dixon's own independent observations while at the Holiday Inn. He observed records that showed that Reyes had placed $600 worth of phone calls during his ten-day stay, which were paid for in cash. In fact, Dixon learned that Reyes paid his entire motel bill, about $1,000, in cash. At the suppression hearing, Dixon, a trained narcotics expert, testified that his experience showed that narcotics traffickers often pay with cash and use the telephone extensively for long distance calls.

Since Dixon was able to corroborate the informant's tip, the government was justified in believing the statement that cocaine was in the Blazer. Moreover, since Dixon personally observed Reyes check out of the motel and pack his belongings into the Blazer, the government could reasonably infer that the cocaine supposedly located in the motel room was transferred into the Blazer. Therefore, when all the information gathered from the informant and Dixon's personal observations is considered in the light of Dixon's extensive narcotic investigation experience, we conclude that the authorities had probable cause to believe contraband was inside the Blazer when Reyes exited the Holiday Inn parking lot.

■ The exigent circumstances surrounding the investigation were also sufficient to justify a warrantless search of the Blazer. Since the officers were at the motel attempting to corroborate the informant's tip to justify obtaining a search warrant, they cannot be faulted for failing to have one in their possession at that time. More important, the suspicion that Reyes would soon depart was clearly warranted by the fact that immediately after loading the Blazer, he checked out of his room and left the motel in the Blazer. We therefore conclude that the circumstances were sufficiently exigent to justify the search and seizure.

III

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that when police officers have probable cause to search an automobile for contraband, they may also conduct a warrantless search of any containers found inside that may conceal the objects of the search. Reyes contends that *Ross* is clearly distinguishable from his case, and that if probable cause existed, it existed only as to the luggage, and the full scale warrantless search of the Blazer and luggage does not fall within the automobile exception to the warrant requirement. He relies on the pre-*Ross* decisions in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), to buttress his argument. *Chadwick* and *Sanders*, however, are clearly distinguishable from the present case.

In *Chadwick*, federal agents seized a footlocker from the trunk of a car. At the time the footlocker was seized, the agents had probable cause to believe it contained marijuana because a trained dog had signalled the presence of the drug. The Court refused to uphold the warrantless search, stating that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." *Chadwick*, 433 U.S. at 13, 97 S.Ct. at 2484. In *Chadwick*, however, the government did not argue the applicability of the automobile exception since they had probable cause to believe that narcotics were in the footlocker before it was placed in the car. *See also United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985).

In *Sanders* a police officer was tipped by a reliable informant that the defendant would arrive at the local airport on a specified flight later that day with a green suitcase containing marijuana. The officer went to the airport where he observed the defendant place a green suitcase in a taxicab. Shortly thereafter, the taxicab was stopped and searched. Once again the

government had probable cause to believe the bag contained marijuana and to search the bag before it was placed in the taxi, so the court held the warrantless search unlawful. In his concurring opinion, Chief Justice Burger explained the Court's rationale:

> Because the police officers had probable cause to believe that respondent's green suitcase contained marihuana before it was placed in the trunk of a taxicab, their duty to obtain a search warrant before opening it is clear under [*Chadwick*] ....
>
> Here, as in *Chadwick*, it was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband. The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick*. The fact that the suitcase was resting in the trunk of the automobile at the "time of respondent's arrest does not turn this into an automobile" exception case. The Court need say no more.

*Sanders*, 442 U.S. at 766–67, 99 S.Ct. at 2594–95.

Here, although the government agents had probable cause to believe narcotics were in the Blazer, they had no reason to know the exact location. Although the informant told Ridings that he saw cocaine in the Blazer and the motel room, he failed to specify exactly where it was or what it was in. Furthermore, Dixon had observed Reyes loading his belongings into the van, but he had no way of knowing whether the cocaine was already in the vehicle or in the bags being carried out. The fact that he observed Reyes check out of the motel and eventually leave its physical surroundings allowed him reasonably to conclude that the cocaine was in the Blazer. But that was the extent of his knowledge. Therefore, probable cause extended to the entire vehicle and its contents including the cocaine-filled nylon bag.

The present case fits squarely within the *Ross* holding that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825, 102 S.Ct. at 2173.

The defendant's conviction is

AFFIRMED.