**Hilton Murdock AITCH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–92–00264–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 12, 1994.

Rehearing Denied June 23, 1994.

---

E.J. Van Buren, Jr., R. Scott Shearer, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

Hilton Murdock Aitch appeals his conviction for theft by receiving. Appellant was charged by indictment, pled not guilty, and was found guilty by the jury. The court assessed punishment, enhanced by two prior convictions, at 45 years confinement. In eleven points of error appellant complains that evidence should have been suppressed as the fruit of a warrantless arrest and search. Appellant also complains of the testimony of a witness, the prosecutor's closing argument, and the sufficiency of the evidence. We affirm.

The facts are as follows. On June 6, 1991, Carol Ragland was accosted by two black men. One man slugged her in the face, the other pointed a gun at her. They attempted to steal her Rolex watch, but fled when some people responded to Ms. Ragland's screams. According to a witness, the men escaped in a blue Buick Regal, license plate number "CYL–06N". Ms. Ragland gave a description of the men.

The following day Nancy Harrison was returning home. As she began to step out of her car, two men with stockings over their faces ran up to her. One pointed a pistol at her. They stole her Rolex watch, jewelry, purse, and car.

Meanwhile, Sergeant T.G. Turner was investigating the offense against Ms. Ragland. He traced the license plate to a car owned by a rental agency. He discovered that the car had been rented by appellant, Hilton Murdoch Aitch, and that it was to be returned by 5:00 p.m. that afternoon. Sergeant Turner set up surveillance.

Sergeant Turner saw two people drive up and return the car at about 6:00 p.m. Appellant was in a Mercedes which followed the Buick into the agency. After the two people returned the car, they got into the Mercedes with appellant. They then drove away.

Turner radioed for a patrol officer to stop the Mercedes on suspicion of robbery. Officer Richard Babin responded and pulled over appellant's car. He asked appellant for his driver's license and proof of insurance. Appellant grabbed a black purse that was sitting on the console and removed his identification. Officer Babin asked appellant to open the purse wider so that he could see the contents. He noticed a set of keys, a pair of diamond earrings, and a ring. There was no weapon.

Officer Babin radioed Sergeant Turner and told him the names of the suspects. Sergeant Turner told Babin to arrest all three on suspicion of robbery. Babin placed the suspects under arrest and put them in the back of his patrol car. He put the purse in the trunk of the Mercedes, locked the vehicle, and left it parked in a nearby parking lot.

At the police station, Sergeant Turner discussed both robberies with another investigator, Sergeant Armbruster. When Babin arrived, they asked him if he had seen any jewelry in appellant's possession. Officer Babin told them about the purse containing the jewelry which he had placed into the trunk of the Mercedes. An officer was sent to retrieve the items. Nancy Harrison positively identified the keys and earrings as belonging to her.

In his first four points of error appellant argues that the trial court erred in overruling his motion to suppress because the evidence was seized as the result of an illegal detention, a warrantless arrest under the Fourth Amendment, an illegal arrest under Chapter 14 of the Texas Code of Criminal Procedure, and because appellant's arrest was a "pretext arrest."

■ In order to justify an investigative detention, an officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion on the person stopped for further investigation. *Terry v. Ohio*, 392 U.S. 1, 20, 30, 88 S.Ct. 1868, 1880, 1884, 20 L.Ed.2d 889 (1968); *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App.1984). These facts must create a reasonable suspicion in the officer's mind that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App. 1983).

■ Sergeant Turner knew that a crime had occurred against Ms. Ragland. He knew that the car which had been used to flee the scene of the attack was rented in appellant's name. He saw two people return the rental car to the agency, then get into a Mercedes driven by a third person and leave. At that time Sergeant Turner had reasonable articulable facts upon which to base a belief that the occupants of the car were involved in the offense against Ms. Ragland. Sergeant Turner radioed Officer Babin to stop the Mercedes and determine the identities of the three people. The driver of the vehicle was

appellant. The officer properly stopped appellant and his companions in order to identify them and obtain more information. *Mays v. State,* 726 S.W.2d 937, 944 (Tex.Crim.App. 1986); *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). The detention was reasonable and legal.

■ Appellant's arrest was a valid warrantless arrest under Article 14.03(a)(1) of the Texas Code of Criminal Procedure. That article permits an officer to arrest, without a warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of a felony. The Texas Court of Criminal Appeals has held that a place may become suspicious due to facts and circumstances known to the officer and any reasonable inferences which can be drawn from those facts. *Johnson v. State,* 722 S.W.2d 417, 421 (Tex.Crim.App.1986).

Sergeant Turner already knew the rental car had been used in the commission of a felony against Ms. Ragland. He knew the Buick was rented in appellant's name. He observed two people return it and then get into a Mercedes driven by appellant. The facts already known to Sergeant Turner, coupled with this new information, allowed for a reasonable inference that appellant and/or the passengers in his car committed the offense against Ms. Ragland. These facts permitted Sergeant Turner to determine that the Mercedes was a suspicious place. *See, Hamel v. State,* 582 S.W.2d 424, 427 (Tex. Crim.App. [Panel Op.] 1979) (information obtained pursuant to a legal detention of an automobile empowered officers to make a warrantless arrest, because the vehicle itself became a suspicious place). We hold that the detention and arrest of appellant was legal. We further note that the "pretext arrest" doctrine defense asserted by appellant in his fourth point is no longer recognized in Texas. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App.1992). We overrule appellant's first four points of error.

In his fifth, sixth, and seventh points of error, appellant alleges the trial court erred in overruling his motion to suppress because the evidence was seized by a warrantless search in violation of the Fourth Amendment of the United States Constitution, and Article I, Section 9 of the Texas Constitution, it was seized as a result of an illegal inventory search of his car, and because the trial court relied upon a nonexistent "inevitable discovery" exception to the Texas exclusionary rule. Appellant's arguments present both state and federal constitutional issues which must be analyzed separately.

■ In *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991), the Court of Criminal Appeals, concluding that the Texas Constitution was not intended "to mirror that of the federal government," reserved the power to interpret Article I, Section 9 on independent state constitutional grounds. *Id.* at 690. This allegedly results, of course, in a different analysis than that applied by the United States Supreme Court to the Fourth Amendment. *Aycock v. State,* 863 S.W.2d 183, 185 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Since its pronouncement in *Heitman,* however, the Court of Criminal Appeals has departed from traditional Fourth Amendment analysis only in one instance. In that case, the Court concluded that use of a pen register may well constitute a search under Article I, Section 9. *Richardson v. State,* 865 S.W.2d 944, 953 (Tex.Crim.App.1993). The Court's decision differed from that reached by the United States Supreme Court in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (installation of pen register is not a search). Barring *Richardson,* however, this Court cannot find any other instance in which the Court of Criminal Appeals has interpreted Article I, Section 9 in a manner any different from analysis applied to the Fourth Amendment of the United States Constitution. *See also, Aycock,* 863 S.W.2d at 185. Nor can we find an instance where one of the courts of appeal has likewise departed from traditional Fourth Amendment principles. In fact, our sister courts are in agreement that current interpretation of Article I, Section 9, in Texas is consistent with interpretation of the Fourth Amendment. *Hernandez v. State,* 867 S.W.2d 900, 908 (Tex.App.—Texarkana 1993, no pet.); *Johnson v. State,* 834 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Cook v. State,* 832 S.W.2d 62, 65

(Tex.App.—Dallas 1992, no pet.). We find *Johnson v. State*, 864 S.W.2d 708 (Tex. App.—Dallas 1993, pet. granted), particularly instructive. The Dallas court engaged in a lengthy analysis of the historical application of Article I, Section 9. That court noted it could find *no case* in which the Court of Criminal Appeals held a search and seizure to be valid under the Fourth Amendment, but invalid under Article I, Section 9. *Id.* at 718. Relying on several Fourth Amendment Supreme Court cases to interpret Article I, Section 9, the court of appeals concluded that a fleeing suspect is not seized unless he voluntarily stops as a result of an officer's show of authority, or is physically forced to stop. *Id.* at 722. Thus, the Dallas court declined to apply a different standard of analysis to Article I, Section 9, than that applied to interpretation of the Fourth Amendment. Based upon the foregoing, we hold Article I, Section 9, of the Texas Constitution should be interpreted in a manner consistent with the Fourth Amendment of the United States Constitution. *See also, State v. Grant*, 832 S.W.2d 624, 627–629 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

■ Appellant's federal constitutional arguments are predicated upon his contention that the search of his car and the seizure of the evidence did not fall within any of four exceptions established by the United States Supreme Court, and recognized by the Texas Court of Criminal Appeals. Those four exceptions are (1) a search and seizure incident to a lawful arrest, (2) the "automobile" exception, (3) inventory search, and (4) the "plain view" doctrine. The State, however, asserts that the evidence, namely the earrings and keys belonging to Ms. Harrison, were validly seized under Article 18.16 of the Texas Code of Criminal Procedure. That article grants individuals, including peace officers, the right to prevent the consequences of theft by seizing any personal property which has been stolen and delivering it, along with the supposed offender, to a magistrate for examination, or a peace officer for that purpose. There must be reasonable ground to suppose the property to be stolen.

■ We agree with the Corpus Christi Court of Appeals that Article 18.16 "may not restrict an individual's right to be free from unreasonable searches and seizures." *State v. Cantu*, 776 S.W.2d 728, 730 (Tex.App.— Corpus Christi 1989, pet. ref'd). We also agree that the applicability of Article 18.16 must be determined in light of a Fourth Amendment analysis. *Id.* The "reasonable grounds" required by article 18.16 equate to "probable cause" under the Fourth Amendment. *Id.* We find the reasoning of the court of appeals to be sound and therefore look at the State's seizure of this evidence, allegedly under article 18.16, in light of the Fourth Amendment to determine whether the search and seizure was reasonable.

■ We also agree with appellant that the seizure is not justified as a search incident to a lawful arrest. A search incident to lawful arrest must occur substantially contemporaneous with the arrest and is restricted to the area within the immediate control of the arrestee. *Vale v. Louisiana*, 399 U.S. 30, 33, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970). Nor was the search justified as an inventory search because the record discloses that the only item removed from the car was the purse containing the jewelry. Ergo, the vehicle was not inventoried. Finally, the search and seizure is not justified under the "plain view" exception. In order to be a valid search under the plain view doctrine, the illicit nature of the evidence must be immediately apparent to the seizing officer; after-acquired knowledge is insufficient to sustain a search and seizure under this doctrine. *State v. Haley*, 811 S.W.2d 597, 599 (Tex.Crim.App.1991).

■ This leaves us with the automobile exception. Appellant avers that the car was legally parked in a public place, locked, and that he, appellant, was under arrest and in custody. He further points out that police returned to the car at least half an hour after his arrest. Finally, appellant contends that there was no danger that the car or the handbag would be moved and therefore the police had time to procure a warrant. For these reasons, he contends, the search of his vehicle and seizure of the handbag violated his Fourth Amendment rights.

Furthermore, Appellant cites *Stine v. State*, 787 S.W.2d 82 (Tex.App.—Waco 1990, pet. ref'd), to support his contention that the search and seizure did not fall within the automobile exception. In that case, police officers seized a bloody baseball bat and towel from a station wagon they had parked in a private driveway one hour earlier. The court of appeals concluded that the search and seizure did not fall within the ambit of the automobile exception. That court relied on language in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), that the automobile must be searched immediately, or seized without a warrant and held until a search warrant can be obtained. *Stine*, 787 S.W.2d at 86. Because the officers did not search the station wagon at the time they stopped it, when they had probable cause, the court of appeals concluded that the later, warrantless search was unreasonable.

We respectfully disagree, however, with that court's analysis under the automobile exception. Officers Babin, Turner, and Armbruster had probable cause to search the vehicle once they suspected the purse which Babin had placed in the trunk contained evidence of a crime. It did not arise when Babin first looked into the purse, because Babin lacked vital knowledge pertaining to the earlier robbery of Ms. Harrison. Nor did it arise when he placed the purse into the trunk.

Nevertheless, upon conferring with Turner and Armbruster, Babin learned of the robbery and shared his information, namely, that items matching a description of Ms. Harrison's stolen property were in the hand bag. The officers then had sufficient knowledge to give rise to probable cause that the hand bag contained stolen property.

■ It is well established that a warrantless search of an automobile where there is probable cause to believe it contains contraband or evidence of a crime is not unreasonable within the meaning of the Fourth Amendment. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The United States Supreme Court has articulated two reasons for this exception to Fourth Amendment protection against unreasonable searches and seizures. The first is that vehicles are readily mobile, rendering any opportunity to search them "fleeting." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

■ The second reason is that "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). One's expectation of privacy in their vehicle is reduced because vehicles which are capable of travelling on public highways are subject to pervasive governmental regulation. *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 2069–2070, 85 L.Ed.2d 406 (1985). In other words, the Supreme Court reasons, everyday citizens expect to be accorded less privacy in their cars because the government has a compelling need to regulate automobiles. *Id.* Furthermore, even where a vehicle is not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifies application of the vehicular exception. *Id.* at 391, 105 S.Ct. at 2069.

■ Application of the automobile exception does not depend upon whether the defendant is present at the time the vehicle is searched. It is dependent upon the fact that a car is readily mobile, and also upon the fact that people have reduced expectations of privacy in their automobiles. The fact that officers had arrested appellant and taken him downtown did not in any way detract from the fact that the car was still readily mobile. Nor did the fact that officers left it parked increase appellant's expectation of privacy in the vehicle. If a police officer had walked past appellant's car an hour later and seen contraband sitting on the front seat, he would have had just as much probable cause to search the vehicle at that time as if officers had discovered the same contraband at the moment they arrested appellant. Finally, the fact that officers had taken possession of appellant's car keys did not immobilize the car; it is a sad commentary on modern society that cars are frequently "mobilized" without resort to keys.

Having determined that the search of appellant's automobile was not unreasonable under the Fourth Amendment, we now turn to the issue of whether the officers had probable cause. It is axiomatic that a warrantless search of a vehicle will be upheld where two requirements are met. First, there must be probable cause to believe that the vehicle contains contraband or evidence of a crime. Second, there must be "exigent circumstances" which justify the failure to first obtain a warrant. *United States v. Cisneros–Mireles*, 739 F.2d 1000 (5th Cir. 1984). Exigent circumstances, with respect to parked cars, for example, can exist where a defendant is still at large, where a defendant is in custody but his accomplices are still at large, where a friend or family member of the defendant knows of the police interest in the defendant or the car, or where the car is parked on the street under circumstances where someone might tamper with it. *Id.* at 1004, n. 3. There was no evidence in the record that appellant's accomplice(s) had been apprehended. There was no evidence in the record that appellant had not been given an opportunity to contact family members or friends who might be willing to chance removing the car. Finally, there is no evidence in the record that the car was parked in a safe or secure area where the risk of its being broken into or stolen was minimized. Any of these factors alone is sufficient to give rise to "exigent circumstances" and justify the officers' need to act quickly and without first obtaining a warrant.

In light of these facts, we hold that the officers had probable cause to search the car. That search was a valid warrantless search pursuant to the automobile exception and based upon the fact that the vehicle was parked in a public place and capable of being removed before officers could obtain a warrant, and also upon the fact that appellant had a reduced expectation of privacy in the car. Consequently, we overrule appellant's Fourth Amendment complaints. We overrule appellant's fifth, sixth, and seventh points of error.

In his eighth point of error, appellant charges that the court erred in admitting the irrelevant testimony of Carol Ragland. That testimony concerned the robbery which had occurred the day before. Ms. Ragland did not identify appellant as one of the participants in that robbery, but appellant argues that her testimony nevertheless invited the jury to consider whether he had taken part in the extraneous offense.

We disagree. Evidence of extraneous offenses or acts is admissible when intent is an essential element of the State's case and where such intent cannot be inferred from the act itself. *Crawley v. State*, 513 S.W.2d 62, 64 (Tex.Crim.App.1974). There is no evidence of appellant's intent in the testimony regarding the discovery of appellant with the stolen property. He simply had it in his possession, and his intent to deprive Ms. Harrison of her property cannot be inferred from that alone. The State used Ms. Ragland's testimony to show that appellant had the requisite intent and knowledge. Her testimony connected him with the first robbery because he rented the getaway car. His picking up the two people after they dropped that car off at the rental agency, coupled with the fact that he was found to be in possession of Ms. Harrison's earrings and car keys, plus the fact that the second robbery was committed in a similar manner and that the two robbers targeted the same type of goods, *e.g.* a Rolex watch and jewelry, was enough to let the jury find appellant had the requisite intent and knowledge. Consequently the testimony was relevant and the trial court did not abuse its discretion in admitting it. We overrule appellant's eighth point of error.

In his ninth and tenth points of error, appellant complains of the prosecutor's closing argument. He specifically alleges that the prosecutor misstated the definition of "fair market value" as contained in the jury charge. He also argues that the prosecutor commented on the defendant's failure to testify.

Appellant called a certified gemologist at trial to testify about the fair market value of the earrings. She stated the fair market value was between $500 and $650. The State called its own expert who testified that the cash value was between $900 and $1000, and

that in a retail environment the earrings would sell for about $1600. Ms. Harrison herself testified that she was satisfied that the earrings had a fair market value of over $750. She based her opinion on the fact that her husband had paid $1200 for them.

The jury was charged concerning fair market value. The charge stated that the value of stolen property is, "[i]ts fair market value at the time and place of the offense." The charge defined "value" to mean that amount of money the property would have sold for in cash.

During his closing argument, the prosecutor said, "... what was the value of those earrings ... I think common sense is, what did Ms. Harrison say she paid for it? ... What did she say the cost was? 1200 bucks." Defense counsel objected that the State's attorney was misstating the charge. Later, the prosecutor said, regarding its expert's testimony, "Ms. Walzel gave you a good value today. Why? She's in the business. She knows what things sell for."

■ The owner of property is competent to testify as to the value of his own property. Furthermore, when the owner testifies about the value of his property, there is a presumption that he is testifying to an estimation of the fair market value. *Sullivan v. State*, 701 S.W.2d 905, 908, 909 (Tex.Crim.App.1986); *Jones v. State*, 814 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1991, no pet.). The prosecutor argued that the fair market value was that value which Ms. Harrison placed upon the earrings: $1200. The prosecutor also argued that its expert testified that she would pay between $900 and $1000 for the earrings if she purchased them secondhand for resale. Thus, her testimony was sufficient to establish that the cash value of the earrings was between $900 and $1000. Although appellant presented testimony by his own expert that the cash value was considerably less, the jury obviously chose to believe Ms. Harrison and the State's expert over appellant's expert. The trial court did not err by permitting the prosecutor to make this closing argument.

■ Appellant also argues that the prosecutor committed reversible error in closing argument by making an impermissible comment on the defendant's failure to testify. Defense counsel attacked the State's evidence of knowledge and intent at length during closing argument. He suggested the State had presented no evidence proving appellant knew the items were stolen, and that it was impossible for the State to prove that element of the offense. In rebuttal, the prosecutor responded "I can't walk over to this man's mind, open it up and pull out an intent. I can't call him to the stand ..."

■ The general rule is that a prosecutor's comment on the accused's failure to testify violates both the federal and state constitutions. *Losada v. State*, 721 S.W.2d 305, 313 (Tex.Crim.App.1986). However, the prosecutor may refer to an accused's failure to testify in closing argument when such comment is invited by defense counsel's closing argument. *Porter v. State*, 601 S.W.2d 721, 723 (Tex.Crim.App.1980). Defense counsel invited the comment on the part of the prosecutor. Therefore, we overrule appellant's ninth and tenth points of error.

■ In his final point of error, appellant alleges that the evidence is insufficient to support his conviction. The crux of his argument rests upon the proposition that the State failed to prove that appellant received Ms. Harrison's property knowing that it was stolen.

■ When reviewing the sufficiency of the evidence, this Court looks at all the evidence in the light most favorable to the verdict. *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993). It is our duty to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Ransom v. State*, 789 S.W.2d 572, 577 (Tex. Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard applies to both direct and circumstantial evidence cases. *Id.*

Proof that the requisite mental state existed is nearly always demonstrated by circumstantial evidence. *Warren v. State*, 797 S.W.2d 161, 164 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). The State provided the jury with evidence of an extraneous of-

fense in which appellant's rental car was used to flee the scene. This offense was very similar to the offense committed against Ms. Harrison. It had also occurred just one day earlier. The State argues that these facts gave rise to a probability that appellant was aware of both offenses, and thus knew the items in his possession were stolen. We agree that this evidence was sufficient for a rational trier of fact to find all the elements of the offense beyond a reasonable doubt. Accordingly, we overrule appellant's last point of error. We affirm the judgment.