# NO. 12-08-00016-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TINA MASHELLE STRAIN,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Tina Mashelle Strain appeals her conviction for possession of between one and four grams of cocaine, for which she was sentenced to imprisonment for thirty years. In two issues, Appellant argues that there is factually insufficient evidence to support the jury's implied finding that her detention and resulting search were legal and that her sentence was disproportionate to the crime for which she was convicted. We affirm.

### BACKGROUND

Appellant was charged by indictment with possession of between one and four grams of cocaine. The indictment further alleged that Appellant had been previously convicted of three felonies. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, Corporal Steve McDaniel testified as the State's first witness. McDaniel testified that he has been a certified peace officer for eleven years. McDaniel further testified that at approximately 5:00 p.m. on August 9, 2006, he and Officer Melvin Hill were patrolling the area near the intersection of Conway Street and West Green Street in Palestine, Texas. McDaniel stated that on the northeast corner of that intersection, there is a house that was known to be a "drug house" where people sell illegal drugs. McDaniel remarked that the Palestine Police Department had made arrests at that house within ten days of the afternoon in question. McDaniel testified that as he drove

by the house, which he understood to be vacant, he noticed a person at the southwest corner of the house. McDaniel further testified that when the person saw his patrol car approaching, she[1] walked eastward along the front of the house and out of his sight. McDaniel stated that based on his experience, such behavior is a common reaction of a person who possesses illegal items. McDaniel further stated that when he regained sight of the person, he saw her reach down the front of her shirt, pull something out, and stuff that item into a nearby purse. McDaniel testified that, based on his experience, he believed the person was trying to secret something she did not want to be discovered possessing. McDaniel further testified that after the person stuffed the item in her purse, she grabbed a broom and began sweeping the front porch. Based on the person's actions, McDaniel decided to initiate an encounter to determine what was afoot.

As Hill secured the rear of the house, McDaniel approached the person he later identified at trial as Appellant. McDaniel stated that Appellant acted nervous, was visibly shaking, was sweating, and would not make eye contact with him. McDaniel further stated that Appellant's demeanor caused him to suspect that she possessed illegal narcotics. McDaniel asked Appellant what she was doing at that house. According to McDaniel, Appellant responded that she was "sweeping." McDaniel testified that as he continued to speak to Appellant, she became more nervous, was visibly shaking, was sweating more, and that her voice was trembling. During his conversation with Appellant, McDaniel noticed a purse, which Appellant acknowledged owning. McDaniel asked Appellant for consent to search the purse, but Appellant declined his request. McDaniel stated that he approached the purse, the top of which was unzipped, to attempt to observe any contents that might be plainly visible. McDaniel further stated that as he observed the purse, he noticed a small matchbox with an off-white colored residue on it, which he believed, based on his training and experience, to be cocaine. McDaniel testified that he also observed a long cylindrical object that appeared to be a crack pipe. McDaniel further testified that Hill directed his attention to a Brillo® pad located in an open side pocket of the purse. McDaniel explained that often, small pieces of copper wire mesh are rolled up and inserted into one end of a crack pipe to serve as a filter.

McDaniel stated that, based on his observations, he informed Appellant that he thought he

---

[1] McDaniel later identified the person he saw as Appellant, a female. McDaniel testified that he could not determine the person's gender from the car.

saw drugs and drug paraphernalia in her purse and that he intended to conduct a search of the purse to retrieve such items. McDaniel further stated that, as a result of his search, he retrieved a matchbox containing white residue,[2] a cigarette package containing a crack pipe,[3] a Brillo® pad with pieces torn from it, and another matchbox containing five off-white colored rocks of crack cocaine. The State offered each of these items discovered in Appellant's purse into evidence. At each instance where the items were offered into evidence, Appellant specifically stated that she had "no objection" to their admission.

Palestine Police Sergeant Bill Guthrie testified next on the State's behalf. Guthrie testified that the property in question was a well known drug trafficking area where he had made an arrest for possession of approximately seven grams of crack cocaine in the week prior to the date at issue. Guthrie further testified that when he heard McDaniel was on the property that day, he went to the property as well. Guthrie stated that as McDaniel was observing Appellant's purse, he noticed the Brillo® pad in the purse's side pocket and noted his observation to McDaniel. Guthrie further stated that during this time, Appellant was very evasive with her answers and was "trying to draw attention to ... disclaimers" such as "'I'm not doing anything wrong' [or ] 'I'm just here cleaning up.'" Guthrie described Appellant's behavior as "very unusual" in light of his past experiences. On cross examination, Guthrie acknowledged that certain household goods can leave residues similar to an illegal drug.

Following Guthrie's testimony, both parties rested. In the court's charge, the jury was instructed with regard to seizure of items in plain view and further instructed that if it had a reasonable doubt as to whether the peace officer lawfully obtained the evidence in question, it could not consider it. Ultimately, the jury found Appellant "guilty" as charged. The matter proceeded to a jury trial on punishment. Thereafter, the jury assessed Appellant's punishment at imprisonment for thirty years.[4] The trial court sentenced Appellant accordingly, and this appeal followed.

### FACTUAL SUFFICIENCY OF EVIDENCE REGARDING LEGALITY OF

---

[2] The record reflects that the residue was still present on the matchbox at the time of trial.

[3] The item McDaniel observed that he believed to be a crack pipe was, in fact, a "mascara pencil."

[4] The jury found that two paragraphs in the indictment alleging prior felony convictions were "true."

3

## VOLUNTARY ENCOUNTER AND/OR DETENTION AND SEARCH AND SEIZURE

In her first issue, Appellant contends that the evidence is factually insufficient to support the jury's implied finding that probable cause existed for McDaniel's detention and resulting search of her purse. Appellant was entitled to challenge the legality of the search and seizure at issue in one of three of the following ways: (1) by filing a pretrial motion to suppress evidence; (2) by waiting until the trial on the merits and objecting when the alleged unlawfully obtained evidence was offered; or (3) by raising a factual dispute concerning the circumstances of the search and seizure and requesting a jury instruction thereon. *See Holmes v. State*, 223 S.W.3d 728, 731 (Tex. App.–Houston [14th Dist.] 2007, pet. granted). Here, since Appellant did not challenge the admissibility of the evidence seized, but rather raised a fact issue and obtained a jury instruction on the legality of the search and seizure, her statement that she had "no objection" to the admission of the evidence seized did not result in "waiver of the issue at hand. *Id.*

When an appellant raises a contention that the evidence is not factually sufficient to support the trial court's judgment, we must first assume that the evidence is legally sufficient under the *Jackson*[5] standard. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all of the evidence weighed by the fact finder that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the fact finder's determination, even if probative evidence exists that supports the verdict, *see Clewis*, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. Where there is conflicting evidence, the verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient

---

[5]*See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the verdict).

**Voluntary Encounter and/or Investigative Detention**

Appellant argues that she was not acting in any perceivable unlawful manner, but was blanketed with the auspices of the premises that were purportedly, at one time, known to be a drug haven. Appellant further contends that Guthrie's testimony "challenge[s] the imagination" with regard to his ability to view purported drug paraphernalia and illegal activity and "fail[s] to demonstrate any exigent circumstance that would present a threat to the maintenance of peace."

We first note that not every encounter between police and citizens implicates the Fourth Amendment. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991)). A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen. Such encounters are consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Id.* The Supreme Court in Bostick emphasized that

> [w]hen officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ... ask to examine the individual's identification, ... and request consent to search his or her luggage, ... as long as the police do not convey a message that compliance with their requests is required.

*Id.*, 501 U.S. at 435, 111 S. Ct. at 2386 (citations omitted). Based on our review of the record, we conclude that McDaniel's initiation of contact with Appellant, request for consent to search her purse, and observation of items in plain view amounted to no more than a voluntary encounter.

Yet, even assuming arguendo that McDaniel's contact with Appellant amounted to a temporary detention, such a detention did not violate Appellant's rights. In order to justify an investigative detention, an officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion on the person detained for further investigation. *See Terry v. Ohio*, 392 U.S. 1, 20, 30, 88 S. Ct. 1868, 1880, 1884, 20 L. Ed. 2d 889 (1968); *Glass v. State*, 681 S.W.2d 599, 601 (Tex. Crim. App. 1984); *Aitch v. State*, 879 S.W.2d 167, 171 (Tex. App.–Houston [14th Dist.] 1994, pet. ref'd). These facts must be examined in terms of the totality of the circumstances and will be

justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *See **Woods v. State***, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); ***Aitch***, 879 S.W.2d at 171. Circumstances short of probable cause for an arrest may justify a temporary investigation or detention because investigation is a lesser intrusion on personal security than an arrest. ***Livingston v. State***, 739 S.W.2d 311, 326 (Tex. Crim. App. 1987). An inarticulable hunch or suspicion that a person has or is committing a crime is not sufficient; a peace officer must have specific and articulable facts which, in light of his experience and personal knowledge, taken together with rational inferences from these facts, would reasonably warrant intrusion of an individual stopped for further investigation. ***Id.*** However, an officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. ***Id.***

McDaniel stated that at the northeast corner of the intersection where he was patrolling, there is a house that is known to be a location where people sell illegal drugs and that the Palestine Police Department had made arrests at that house within ten days of the afternoon in question. McDaniel testified that he understood that the house was vacant and that, as he drove by, he noticed a person at the southwest corner of the house, who walked eastward along the front of the house and out of his sight as he approached. McDaniel stated that based on his experience, such behavior is a common reaction of a person who possesses illegal items. McDaniel further stated that when he regained sight of the person, he saw her reach down the front of her shirt, pull something out, and stuff that item into a nearby purse. McDaniel testified that, based on his experience, he believed the person was trying to secret something she did not want to be discovered possessing. McDaniel further testified that after the person stuffed the item in her purse, she grabbed a broom and began sweeping the front porch. Based on the person's actions, McDaniel decided to initiate an encounter.

Based on our review of the record, we hold that McDaniel articulated facts in his testimony that demonstrated that he possessed a reasonable suspicion that some activity out of the ordinary was occurring. While, as Appellant suggests, her actions were not perceivably unlawful, an investigative detention can be undertaken without the officer's observing an unlawful act. *See, e.g., **Woods***, 956 S.W.2d at 34 (the appellant was detained based on articulated factors including (1) appearing

surprised and scared at the sight of a courthouse x-ray machine, (2) turning away from the x-ray screening area toward the main entrance, and seeming " very nervous" when officer informed her she would have to pass through the metal detectors to reach the elevators).

**Plain View Doctrine**

Both the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution protect the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also* **Garza v. State**, 137 S.W.3d 878, 885 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd) (article I, section 9 of Texas Constitution does not offer greater protection to individuals against unreasonable searches and seizures than Fourth Amendment). The United States Supreme Court has held that the Fourth Amendment generally imposes a warrant requirement for searches. *See* **Katz v. United States**, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967). "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." **United States v. Jacobsen**, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984).

Warrantless searches are "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." **Katz**, 389 U.S. at 357, 88 S. Ct. at 514. One of these exceptions is known as the "plain view doctrine." *See, e.g.,* **Martinez v. State**, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000). The plain view seizure doctrine requires a two prong showing: (1) that law enforcement officials see an item in plain view at a vantage point where they have the right to be, and (2) it is immediately apparent that the item seized constitutes evidence—that is, there is probable cause to associate the item with criminal activity. **Id.**

As set forth above, McDaniel articulated facts setting forth that he had reasonable suspicion to initiate contact with and temporarily detain Appellant. Thus, when observing items in plain view inside Appellant's purse, the officers had a right to be where they were. McDaniel stated that he observed a purse on the front porch of the house near to Appellant and had seen Appellant remove an item from her shirt and place that item in a purse. McDaniel further stated that the top portion of the purse was open and he noticed a small matchbox in the purse with an off-white colored residue on it, which he believed, based on his training and experience, to be cocaine. Guthrie's testimony was largely consistent with McDaniel's account of the facts. We hold that McDaniel's

7

observance in plain view of the matchbox containing a residue McDaniel believed to be cocaine provided the requisite probable cause for the officers to search Appellant's purse. *See Foster v. State*, No. 05-94-00936-CR, 1995 WL 702539, at *2 (Tex. App.–Dallas Nov. 28, 1995, no pet.) (not designated for publication) (seizure of a white powdery substance under the plain view doctrine is permissible when the officer does not know exactly what the substance is, but has probable cause to believe it is an illicit substance) (citing *Miller v. State*, 667 S.W.2d 773, 777 (Tex. Crim. App. 1984); *Butler v. State*, 825 S.W.2d 727, 728 (Tex. App.–Houston [14th Dist.] 1992, no pet.)).

## Summary

We have reviewed the record in its entirety. Having done so, we iterate that our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony, *see Santellan*, 939 S.W.2d at 164, and where there is conflicting evidence, the verdict on such matters is generally regarded as conclusive. *See Van Zandt*, 932 S.W.2d at 96. It follows that the jury was entitled to find that the reasons McDaniel articulated for his initiating an encounter with and/or temporarily detaining Appellant were valid and supported his belief that Appellant was, had been, or soon would be engaged in criminal activity. Moreover, the jury was entitled to find that McDaniel later observed items in plain view which he had probable cause to believe were evidence of a crime. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the jury's finding of guilt[6] is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. Appellant's first issue is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In her second issue, Appellant contends that the thirty year sentence imposed on her is disproportionate to the crime for which she was convicted and that her sentence violated the cruel and unusual punishment clause of the United States Constitution. *See* U.S. CONST. amend. VIII; *see also* TEX. CONST. art I, § 13. However, Appellant made no timely objection to the trial court raising

---

[6] The jury did not make a separate express finding concerning the legality of the search.

the issue of cruel and unusual punishment and has, therefore, waived such an issue on appeal. *See Willis v. State*, 192 S.W.3d 585, 595–97 (Tex. App.–Tyler 2006, pet. ref'd); *see also* Tex. R. App. P. 33.1.

Even absent waiver, we conclude that Appellant's sentence did not constitute cruel and unusual punishment. Appellant was convicted of possession of between one and four grams of cocaine. *See* Tex. Health & Safety Code Ann. §§ 481481.102(3)(D), 481.115(a), (c) (Vernon 2003 & Supp. 2008). The punishment range for such an offense is between twenty-five and ninety-nine years. *See id.*; Tex. Pen. Code Ann. §§ 12.34(a), 12.42(d) (Vernon Supp. 2008). Here, the sentence imposed by the trial court falls within the range set forth by the legislature. *Id.* Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.–Texarkana 1995, pet. ref'd).

Nonetheless, we have considered the threshold question of whether Appellant's sentence is grossly disproportionate to the crime. *See, e.g., McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.–Texarkana 1999, no pet.); *see also Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 2707, 115 L. Ed. 2d 836 (1991); *Solem v. Helm*, 463 U.S. 277, 298–300, 103 S. Ct. 3001, 3013–15, 77 L. Ed. 2d 637 (1983). In conducting our analysis, we are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), in which the Supreme Court upheld the petitioner's mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *Id.*, 445 U.S. at 266, 100 S. Ct. at 1135. The offense committed by Appellant—possession of cocaine—is more serious than any of the offenses committed by the appellant in *Rummel*, and Appellant's thirty year sentence is far less severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it follows that if the sentence in *Rummel* was not unconstitutionally disproportionate, then neither is the sentence assessed against Appellant in the case at hand. Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining

elements of the *Solem* test.[7]  Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

     **JAMES T. WORTHEN**     
Chief Justice

Opinion delivered November 26, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[7] Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions.  *Solem*, 463 U.S. at 292, 103 S .Ct. at 3011.

10