NO. 12-08-00016-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




TINA MASHELLE STRAIN,
§
 APPEAL FROM THE 3RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






MEMORANDUM OPINION


 Tina Mashelle Strain appeals her conviction for possession of between one and four grams
of cocaine, for which she was sentenced to imprisonment for thirty years. In two issues, Appellant
argues that there is factually insufficient evidence to support the jury's implied finding that her
detention and resulting search were legal and that her sentence was disproportionate to the crime for
which she was convicted. We affirm.


Background Appellant was charged by indictment with possession of between one and four grams of
cocaine. The indictment further alleged that Appellant had been previously convicted of three
felonies. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

 At trial, Corporal Steve McDaniel testified as the State's first witness. McDaniel testified
that he has been a certified peace officer for eleven years. McDaniel further testified that at
approximately 5:00 p.m. on August 9, 2006, he and Officer Melvin Hill were patrolling the area near
the intersection of Conway Street and West Green Street in Palestine, Texas. McDaniel stated that
on the northeast corner of that intersection, there is a house that was known to be a "drug house"
where people sell illegal drugs. McDaniel remarked that the Palestine Police Department had made
arrests at that house within ten days of the afternoon in question. McDaniel testified that as he drove
by the house, which he understood to be vacant, he noticed a person at the southwest corner of the
house. McDaniel further testified that when the person saw his patrol car approaching, she (1) walked
eastward along the front of the house and out of his sight. McDaniel stated that based on his
experience, such behavior is a common reaction of a person who possesses illegal items. McDaniel
further stated that when he regained sight of the person, he saw her reach down the front of her shirt,
pull something out, and stuff that item into a nearby purse. McDaniel testified that, based on his
experience, he believed the person was trying to secret something she did not want to be discovered
possessing. McDaniel further testified that after the person stuffed the item in her purse, she grabbed
a broom and began sweeping the front porch. Based on the person's actions, McDaniel decided to
initiate an encounter to determine what was afoot. 

 As Hill secured the rear of the house, McDaniel approached the person he later identified at
trial as Appellant. McDaniel stated that Appellant acted nervous, was visibly shaking, was sweating,
and would not make eye contact with him. McDaniel further stated that Appellant's demeanor
caused him to suspect that she possessed illegal narcotics. McDaniel asked Appellant what she was
doing at that house. According to McDaniel, Appellant responded that she was "sweeping." 
McDaniel testified that as he continued to speak to Appellant, she became more nervous, was visibly
shaking, was sweating more, and that her voice was trembling. During his conversation with
Appellant, McDaniel noticed a purse, which Appellant acknowledged owning. McDaniel asked
Appellant for consent to search the purse, but Appellant declined his request. McDaniel stated that
he approached the purse, the top of which was unzipped, to attempt to observe any contents that
might be plainly visible. McDaniel further stated that as he observed the purse, he noticed a small
matchbox with an off-white colored residue on it, which he believed, based on his training and
experience, to be cocaine. McDaniel testified that he also observed a long cylindrical object that
appeared to be a crack pipe. McDaniel further testified that Hill directed his attention to a Brillo®
pad located in an open side pocket of the purse. McDaniel explained that often, small pieces of
copper wire mesh are rolled up and inserted into one end of a crack pipe to serve as a filter.

 McDaniel stated that, based on his observations, he informed Appellant that he thought he
saw drugs and drug paraphernalia in her purse and that he intended to conduct a search of the purse
to retrieve such items. McDaniel further stated that, as a result of his search, he retrieved a matchbox
containing white residue, (2) a cigarette package containing a crack pipe, (3) a Brillo® pad with pieces torn
from it, and another matchbox containing five off-white colored rocks of crack cocaine. The State
offered each of these items discovered in Appellant's purse into evidence. At each instance where
the items were offered into evidence, Appellant specifically stated that she had "no objection" to
their admission. 

 Palestine Police Sergeant Bill Guthrie testified next on the State's behalf. Guthrie testified
that the property in question was a well known drug trafficking area where he had made an arrest
for possession of approximately seven grams of crack cocaine in the week prior to the date at issue. 
Guthrie further testified that when he heard McDaniel was on the property that day, he went to the
property as well. Guthrie stated that as McDaniel was observing Appellant's purse, he noticed the
Brillo® pad in the purse's side pocket and noted his observation to McDaniel. Guthrie further stated
that during this time, Appellant was very evasive with her answers and was "trying to draw attention
to ... disclaimers" such as "'I'm not doing anything wrong' [or ] 'I'm just here cleaning up.'" 
Guthrie described Appellant's behavior as "very unusual" in light of his past experiences. On cross
examination, Guthrie acknowledged that certain household goods can leave residues similar to an
illegal drug.

 Following Guthrie's testimony, both parties rested. In the court's charge, the jury was
instructed with regard to seizure of items in plain view and further instructed that if it had a
reasonable doubt as to whether the peace officer lawfully obtained the evidence in question, it could
not consider it. Ultimately, the jury found Appellant "guilty" as charged. The matter proceeded to
a jury trial on punishment. Thereafter, the jury assessed Appellant's punishment at imprisonment
for thirty years. (4) The trial court sentenced Appellant accordingly, and this appeal followed.


Factual Sufficiency of Evidence Regarding Legality of 

Voluntary Encounter and/or Detention and Search and Seizure

 In her first issue, Appellant contends that the evidence is factually insufficient to support the
jury's implied finding that probable cause existed for McDaniel's detention and resulting search of
her purse. Appellant was entitled to challenge the legality of the search and seizure at issue in one
of three of the following ways: (1) by filing a pretrial motion to suppress evidence; (2) by waiting
until the trial on the merits and objecting when the alleged unlawfully obtained evidence was
offered; or (3) by raising a factual dispute concerning the circumstances of the search and seizure
and requesting a jury instruction thereon. See Holmes v. State, 223 S.W.3d 728, 731 (Tex.
App.-Houston [14th Dist.] 2007, pet. granted). Here, since Appellant did not challenge the
admissibility of the evidence seized, but rather raised a fact issue and obtained a jury instruction on
the legality of the search and seizure, her statement that she had "no objection" to the admission of
the evidence seized did not result in "waiver of the issue at hand. Id. 

 When an appellant raises a contention that the evidence is not factually sufficient to support
the trial court's judgment, we must first assume that the evidence is legally sufficient under the
Jackson (5) standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then
consider all of the evidence weighed by the fact finder that tends to prove the existence of the
elemental fact in dispute and compare it to the evidence that tends to disprove that fact. See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to
disagree with the fact finder's determination, even if probative evidence exists that supports the
verdict, see Clewis, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the fact
finder's role as the sole judge of the weight and credibility of witness testimony. Santellan, 939
S.W.2d at 164. Where there is conflicting evidence, the verdict on such matters is generally regarded
as conclusive. See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). 
Ultimately, we must ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence
in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient
only when reviewing court objectively concludes that the great weight and preponderance of the
evidence contradicts the verdict).

Voluntary Encounter and/or Investigative Detention

 Appellant argues that she was not acting in any perceivable unlawful manner, but was
blanketed with the auspices of the premises that were purportedly, at one time, known to be a drug
haven. Appellant further contends that Guthrie's testimony "challenge[s] the imagination" with
regard to his ability to view purported drug paraphernalia and illegal activity and "fail[s] to
demonstrate any exigent circumstance that would present a threat to the maintenance of peace."

 We first note that not every encounter between police and citizens implicates the Fourth
Amendment. Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (citing Florida v.
Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991)). A police officer is
just as free as any other citizen to stop and ask questions of a fellow citizen. Such encounters are
consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about
his business.'" Id. The Supreme Court in Bostick emphasized that


 [w]hen officers have no basis for suspecting a particular individual, they may generally ask
questions of that individual, ... ask to examine the individual's identification, ... and request consent
to search his or her luggage, ... as long as the police do not convey a message that compliance with
their requests is required.


Id., 501 U.S. at 435, 111 S. Ct. at 2386 (citations omitted). Based on our review of the record, we
conclude that McDaniel's initiation of contact with Appellant, request for consent to search her
purse, and observation of items in plain view amounted to no more than a voluntary encounter.

 Yet, even assuming arguendo that McDaniel's contact with Appellant amounted to a
temporary detention, such a detention did not violate Appellant's rights. In order to justify an
investigative detention, an officer must have specific articulable facts which, in light of his
experience and personal knowledge, together with other inferences from those facts, would warrant
the intrusion on the person detained for further investigation. See Terry v. Ohio, 392 U.S. 1, 20, 30,
88 S. Ct. 1868, 1880, 1884, 20 L. Ed. 2d 889 (1968); Glass v. State, 681 S.W.2d 599, 601 (Tex.
Crim. App. 1984); Aitch v. State, 879 S.W.2d 167, 171 (Tex. App.-Houston [14th Dist.] 1994, pet.
ref'd). These facts must be examined in terms of the totality of the circumstances and will be
justified when the detaining officer has specific articulable facts, which taken together with rational
inferences from those facts, lead him to conclude that the person detained actually is, has been, or
soon will be engaged in criminal activity. See Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App.
1997); Aitch, 879 S.W.2d at 171. Circumstances short of probable cause for an arrest may justify
a temporary investigation or detention because investigation is a lesser intrusion on personal security
than an arrest. Livingston v. State, 739 S.W.2d 311, 326 (Tex. Crim. App. 1987). An inarticulable
hunch or suspicion that a person has or is committing a crime is not sufficient; a peace officer must
have specific and articulable facts which, in light of his experience and personal knowledge, taken
together with rational inferences from these facts, would reasonably warrant intrusion of an
individual stopped for further investigation. Id. However, an officer may briefly stop a suspicious
individual in order to determine his identity or to maintain the status quo momentarily while
obtaining more information. Id.  

 McDaniel stated that at the northeast corner of the intersection where he was patrolling, there
is a house that is known to be a location where people sell illegal drugs and that the Palestine Police
Department had made arrests at that house within ten days of the afternoon in question. McDaniel
testified that he understood that the house was vacant and that, as he drove by, he noticed a person
at the southwest corner of the house, who walked eastward along the front of the house and out of
his sight as he approached. McDaniel stated that based on his experience, such behavior is a
common reaction of a person who possesses illegal items. McDaniel further stated that when he
regained sight of the person, he saw her reach down the front of her shirt, pull something out, and
stuff that item into a nearby purse. McDaniel testified that, based on his experience, he believed the
person was trying to secret something she did not want to be discovered possessing. McDaniel
further testified that after the person stuffed the item in her purse, she grabbed a broom and began
sweeping the front porch. Based on the person's actions, McDaniel decided to initiate an encounter. 

 Based on our review of the record, we hold that McDaniel articulated facts in his testimony
that demonstrated that he possessed a reasonable suspicion that some activity out of the ordinary was
occurring. While, as Appellant suggests, her actions were not perceivably unlawful, an investigative
detention can be undertaken without the officer's observing an unlawful act. See, e.g., Woods, 956
S.W.2d at 34 (the appellant was detained based on articulated factors including (1) appearing
surprised and scared at the sight of a courthouse x-ray machine, (2) turning away from the x-ray
screening area toward the main entrance, and seeming " very nervous" when officer informed her
she would have to pass through the metal detectors to reach the elevators). 

Plain View Doctrine

 Both the Fourth Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution protect the right of the people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9;
see also Garza v. State, 137 S.W.3d 878, 885 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd)
(article I, section 9 of Texas Constitution does not offer greater protection to individuals against
unreasonable searches and seizures than Fourth Amendment). The United States Supreme Court has
held that the Fourth Amendment generally imposes a warrant requirement for searches. See Katz
v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967). "A search occurs
when an expectation of privacy that society is prepared to consider reasonable is infringed." United
States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85 (1984).

 Warrantless searches are "per se unreasonable under the Fourth Amendment subject only to
a few specifically established and well-delineated exceptions." Katz, 389 U.S. at 357, 88 S. Ct. at
514. One of these exceptions is known as the "plain view doctrine." See, e.g., Martinez v. State,
17 S.W.3d 677, 685 (Tex. Crim. App. 2000). The plain view seizure doctrine requires a two prong
showing: (1) that law enforcement officials see an item in plain view at a vantage point where they
have the right to be, and (2) it is immediately apparent that the item seized constitutes evidence--that
is, there is probable cause to associate the item with criminal activity. Id. 

 As set forth above, McDaniel articulated facts setting forth that he had reasonable suspicion
to initiate contact with and temporarily detain Appellant. Thus, when observing items in plain view
inside Appellant's purse, the officers had a right to be where they were. McDaniel stated that he
observed a purse on the front porch of the house near to Appellant and had seen Appellant remove
an item from her shirt and place that item in a purse. McDaniel further stated that the top portion
of the purse was open and he noticed a small matchbox in the purse with an off-white colored
residue on it, which he believed, based on his training and experience, to be cocaine. Guthrie's
testimony was largely consistent with McDaniel's account of the facts. We hold that McDaniel's
observance in plain view of the matchbox containing a residue McDaniel believed to be cocaine
provided the requisite probable cause for the officers to search Appellant's purse. See Foster v.
State, No. 05-94-00936-CR, 1995 WL 702539, at *2 (Tex. App.-Dallas Nov. 28, 1995, no pet.) (not
designated for publication) (seizure of a white powdery substance under the plain view doctrine is
permissible when the officer does not know exactly what the substance is, but has probable cause
to believe it is an illicit substance) (citing Miller v. State, 667 S.W.2d 773, 777 (Tex. Crim. App.
1984); Butler v. State, 825 S.W.2d 727, 728 (Tex. App.-Houston [14th Dist.] 1992, no pet.)).

Summary

 We have reviewed the record in its entirety. Having done so, we iterate that our evaluation
should not substantially intrude upon the fact finder's role as the sole judge of the weight and
credibility of witness testimony, see Santellan, 939 S.W.2d at 164, and where there is conflicting
evidence, the verdict on such matters is generally regarded as conclusive. See Van Zandt, 932
S.W.2d at 96. It follows that the jury was entitled to find that the reasons McDaniel articulated for
his initiating an encounter with and/or temporarily detaining Appellant were valid and supported his
belief that Appellant was, had been, or soon would be engaged in criminal activity. Moreover, the
jury was entitled to find that McDaniel later observed items in plain view which he had probable
cause to believe were evidence of a crime. Our review of the record as a whole, with consideration
given to all of the evidence, both for and against the jury's finding, has not revealed to us any
evidence that causes us to conclude that the jury's finding of guilt (6) is so obviously weak or is
otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong
or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial
court's judgment. Appellant's first issue is overruled.


Cruel and Unusual Punishment

 In her second issue, Appellant contends that the thirty year sentence imposed on her is
disproportionate to the crime for which she was convicted and that her sentence violated the cruel
and unusual punishment clause of the United States Constitution. See U.S. Const. amend. VIII; see
also Tex. Const. art I, § 13. However, Appellant made no timely objection to the trial court raising
the issue of cruel and unusual punishment and has, therefore, waived such an issue on appeal. See
Willis v. State, 192 S.W.3d 585, 595-97 (Tex. App.-Tyler 2006, pet. ref'd); see also Tex. R. App.
P. 33.1. 

 Even absent waiver, we conclude that Appellant's sentence did not constitute cruel and
unusual punishment. Appellant was convicted of possession of between one and four grams of
cocaine. See Tex. Health & Safety Code Ann. §§ 481481.102(3)(D), 481.115(a), (c) (Vernon
2003 & Supp. 2008). The punishment range for such an offense is between twenty-five and ninety-nine years. See id.; Tex. Pen. Code Ann. §§ 12.34(a), 12.42(d) (Vernon Supp. 2008). Here, the
sentence imposed by the trial court falls within the range set forth by the legislature. Id. Therefore,
the punishment is not prohibited as cruel, unusual, or excessive per se. See Harris v. State, 656
S.W.2d 481, 486 (Tex. Crim. App. 1983); Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App.
1973); Davis v. State, 905 S.W.2d 655, 664 (Tex. App.-Texarkana 1995, pet. ref'd).

 Nonetheless, we have considered the threshold question of whether Appellant's sentence is
grossly disproportionate to the crime. See, e.g., McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.),
cert. denied, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); see also Jackson v. State, 989
S.W.2d 842, 845-46 (Tex. App.-Texarkana 1999, no pet.); see also Harmelin v. Michigan, 501
U.S. 957, 1005, 111 S. Ct. 2680, 2707, 115 L. Ed. 2d 836 (1991); Solem v. Helm, 463 U.S. 277,
298-300, 103 S. Ct. 3001, 3013-15, 77 L. Ed. 2d 637 (1983). In conducting our analysis, we are
guided by the holding in Rummel v. Estelle, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980),
in which the Supreme Court upheld the petitioner's mandatory life sentence under a prior version
of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. Id.,
445 U.S. at 266, 100 S. Ct. at 1135. The offense committed by Appellant--possession of
cocaine--is more serious than any of the offenses committed by the appellant in Rummel, and
Appellant's thirty year sentence is far less severe than the life sentence upheld by the Supreme Court
in Rummel. Thus, it follows that if the sentence in Rummel was not unconstitutionally
disproportionate, then neither is the sentence assessed against Appellant in the case at hand. 
Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining
elements of the Solem test. (7) Appellant's second issue is overruled.


Disposition

 Having overruled Appellant's first and second issues, we affirm the trial court's judgment.



 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered November 26, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.





















(DO NOT PUBLISH)
1. McDaniel later identified the person he saw as Appellant, a female. McDaniel testified that he could not
determine the person's gender from the car.
2. The record reflects that the residue was still present on the matchbox at the time of trial.
3. The item McDaniel observed that he believed to be a crack pipe was, in fact, a "mascara pencil."
4. The jury found that two paragraphs in the indictment alleging prior felony convictions were "true."
5. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).
6. The jury did not make a separate express finding concerning the legality of the search.
7. Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense
and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the
sentences imposed for commission of the same crime in other jurisdictions. Solem, 463 U.S. at 292, 103 S .Ct. at
3011.